pellant,) agreed that the plaintiff should build for the de-
fendant a house, that after the house was built, if the de-
fendant should disagree as to the plaintiff's bill, that then
two workmen should be selected, one by each party, who
should value the work.  And he further gave in evidence,
by a certain *Henry Green,* jun. and *Edward Boone,* legal
and competent witnesses and workmen, that they, at the
request of the plaintiff and defendant, on the 1st of Janua-
ry 1809, measured and valued the work done by the plain-
tiff for the defendant, under the contract as stated by *Smith,*
the witness; and that they estimated it at $205 24.  It was
admitted that the house was finished before the institution
of the suit.  The defendant then prayed the court to direct
the jury, that inasmuch as a special contract was proved
between the parties, the action of *assumpsit* could not be
supported; but that an action on the special contract was
the proper remedy.  This direction the Court, [*Key,* and
*Clarke,* A. J.] refused to give.  The defendant excepted;
and the verdict being against him, he appealed to this
court.

The cause was argued before BUCHANAN, NICHOLSON,
EARLE, and JOHNSON, J. by

*T. Buchanan,* for the Appellant.
No Counsel appeared for the Appellee.

JUDGMENT AFFIRMED.

GIBSON vs. KEPHART.

APPEAL from *Frederick* County Court.  Trespass for tak-
ing and carrying away rails.  The defendant, (now appel-
lee,) pleaded, 1. *Non cul.* 2. Property in the rails; and 3. A
license to take them away.  General replications, and is-
sues joined.  At the tri al the plaintiff offered in evidence
a deed, dated the 20th September 1806, from the defend-
ant to himself, for a parcel of land called the *Resurvey on
Brother's Agreement;* and proved that the fence rails, to
recover damages for the taking of which this suit was
brought, were on the land at the time of executing the

ed, G informed him that he would afterwards give him leave to move the rails whenever he should re-
quest him.  Such testimony held to be admissible

---

*Margin notes:*

1813.

Gibson
vs
Kephart

DECEMBER.

K executed to
G a deed for a
parcel of land,
on which were a
quantity of fence
rails, which R,
after the deed, re-
moved. G brought
an action of tres-
pass against K for
taking and carry-
ing away the fence
rails, and K de-
fended himself un-
der his plea of a
license to take
them away, and
proved at the trial,
that in a conversa-
tion between him
and G, before the
deed was execut-

1813.

Gibson
vs
Kephart

deed by the defendant, and formed a line of fence enclos-
ing a part of the land, and that the fence rails were re-
moved by the order of the defendant about six months af-
ter the execution of the deed, and before the bringing of
this suit. The defendant then offered in evidence, to sup-
port the issue joined on the third plea, that a settlement
of lines took place between the plaintiff and defendant
some time before the execution of the said deed, and that
upon such settlement a considerable part of a post and rail
fence, put up by the plaintiff, appeared to be on the de-
fendant's land. That the land, on which the greater part
of the post and rail fence stood on the settlement of lines,
was, together with some other lands of the defendant, con-
veyed by the said deed; and on the lands so conveyed the
fence stood, for the taking away of which this suit was
brought, and which fence had been put there by the de-
fendant. That about five or six pannels of the fence, put
up as aforesaid by the plaintiff, stood on the land of the
defendant, and was not conveyed in the said deed. The
plaintiff further offered in evidence, that subsequent to the
deed already offered in evidence, in a conversation be-
tween the plaintiff and defendant, the defendant said to
the plaintiff, What have you left that piece of fence stand-
ing for? (alluding to the five or six pannels of post and
rail fence which still stood on the defendant's land, and
which had been put there by the plaintiff.) That the plain-
tiff said, for you Sir. The defendant then said, you
know how the bargain was, that each of us was to have
our own fence rails. To which the plaintiff made no re-
ply, but thereupon directed the witness to remove the said
piece of post and rail fence from off defendant's land, to
his the plaintiff's land; which was accordingly done. That
the conversation above mentioned took place about one
month after the fence rails, for the taking of which this
suit was brought, had been removed by the defendant's
order. That at the time of this conversation, the plaintiff
knew that the rails for which the suit was brought, had
been taken away by the defendant, and the place from
which they were removed was not more than six or seven
perches distant from the place where this conversation
took place. The defendant then offered to prove, by a
competent witness, that in a conversation between the
plaintiff and defendant, before the execution of the deed

aforesaid, the plaintiff had told the defendant that he would afterwards give him leave to move the rails in question whenever he should request him. The plaintiff objected to this testimony, and prayed that the same might not go to the jury. But the Court, [*Shriver,* A. J.] was of opinion, that the same might be offered to the jury, and did accordingly suffer the same to go to the jury. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before CHASE, Ch. J. and NICHOLSON, EARLE, and JOHNSON, J. by

*Brooke,* for the Appellant; and by
*Taney,* for the Appellee.

JUDGMENT AFFIRMED.

<span style="margin-note">1813.<br>Scott<br>vs<br>Lancaster</span>

---

## SCOTT vs. LANCASTER.

DECEMBER.

APPEAL from *Charles* County Court. The plaintiff below, (now appellant,) brought an action of *assumpsit* against the defendant, (the appellee.) The declaration contained three counts—1. That the defendant on the 25th of May 1804, at, &c. made his certain note in writing, his own proper hand-writing being thereto signed, bearing date the same day and year aforesaid, and thereby promised and agreed to pay to the plaintiff the amount of a certain arbitration bond assigned by a certain *B. Reeder,* and accepted by the defendant, which said bond and award was under the hands and seals of a certain *B. Dyson,* and *B. Douglass,* and also agreed to pay to the plaintiff such balance of a certain *J. Hyndman's* open account, as should appear due— and the plaintiff avers, that the said amount of the said arbitration bond, so assigned and accepted as aforesaid, was £31, and that the said balance, so said to be due upon open account, was £14 2 4. And the plaintiff further says, that the defendant then and there delivered the said note to him the plaintiff, whereby and by reason whereof the defendant became liable to pay to the plaintiff the several amounts before stated, making a total amount of £45 2 4; and the defendant, in consideration thereof, afterwards, on, &c. at, &c. undertook and promised to the plaintiff to pay him the said sum of £45 2 4, when he should be

<span style="margin-note">In *assumpsit* by P against D, on a note in writing, by which D promised to pay to P the amount of an arbitration bond assigned to him by B, and accepted by D, and also to pay to P such balance of J's open account as should appear to be due, with averments as to the amount of those respective claims—D pleaded *non assumpsit,* and the act of limitations, to which issues were joined—and there was a verdict for P on the *first issue,* and damages assessed, and no disposition made of the other issues. On this verdict judgment was entered for P</span>